UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

LONG, PATRICIA A.,

              Plaintiff,

      v.

PEND OREILLE COUNTY SHERIFF'S
DEPARTMENT, et al.,

           Defendants.

No. CV-08-0071-FVS

ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

**THIS MATTER** came before the Court on March 6, 2009, for hearing on Defendants' motions for summary judgment. (Ct. Rec. 8, 17, 38). Plaintiff is proceeding pro se. Defendants Pend Oreille County Sheriff's Department, Gerald Weeks, Eric Schutte and Ronald Froman ("the County Defendants") are represented by Christopher J. Kerley and Michael McFarland. Defendant Jessica Bodey is represented by Thomas M. Smith. Defendant Carol Gaherin is represented by Nicole E. Davis.

**BACKGROUND**

This lawsuit arises from the entry of private property, owned and occupied by Plaintiff, by two Pend Oreille County Sheriff's Department Deputies, Defendants Ronald Froman and Eric Schutte, a court appointed guardian ad litem ("GAL"), Defendant Jessica Bodey, and Ms. Bodey's court appointed assistant, Defendant Carol Gaherin. The entry was made under the authority of orders issued by Pend Oreille County Superior Court Judge Allen Nielson in the context of guardianship proceedings for 92-year-old Edgar Bush, who lived with Plaintiff before being placed in a long-term care facility in Newport, Washington.

ORDER . . . - 1

**DISCUSSION**

**I.    Summary Judgment Standard**

A moving party is entitled to summary judgment when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273-74 (1986).  A material fact is one "that might affect the outcome of the suit under the governing law[.]"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A fact may be considered disputed if the evidence is such that the fact-finder could find that the fact either existed or did not exist.  *Id.* at 249, 106 S.Ct. at 2511 ("all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury . . . to resolve the parties' differing versions of the truth" (quoting *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968))).

The party moving for summary judgment bears the initial burden of identifying those portions of the record that demonstrate the absence of any issue of material fact.  *T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).  Only when this initial burden has been met does the burden of production shift to the nonmoving party.  *Gill v. LDI*, 19 F.Supp.2d 1188, 1192 (W.D. Wash. 1998).  Inferences drawn from facts are to be viewed in the light most favorable to the non-moving party, but that party must do more than show that there is some "metaphysical doubt" as to the material facts.

ORDER . . . - 2

*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986).

Here, the facts upon which the Court relies are either undisputed or established by evidence that permits but one conclusion concerning the fact's existence.

## II.  Analysis

Plaintiff brought this civil rights case under 42 U.S.C. § 1983, pro se, alleging the entrance on her property by Defendants was in violation of her rights under the Fourth Amendment.  (Ct. Rec. 1). The County Defendants assert that the entry was not violative of the Fourth Amendment and, in any event, the individual County Defendants are protected by absolute and/or qualified immunity.  (Ct. Rec. 9). The County Defendants further assert that there is no participant or supervisory liability on the part of Sheriff Weeks and there is no "*Monell*" liability on the part of the Pend Oreille County Sheriff's Department.  (Ct. Rec. 9).  Defendants Bodey and Gaherin argue their actions were also not violative of Plaintiff's Fourth Amendment protections, they are entitled to absolute immunity from this action, and they are entitled to the dismissal of the Section 1983 claims against them because they were not state actors when performing their court appointed tasks for Edgar Bush.  (Ct. Rec. 18, 39).

Section 1983 requires a claimant to prove (1) a person acting under color of state law (2) committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States.  *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988).  A person deprives another "of a

ORDER . . . - 3

constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which the plaintiff complains." *Redman v. County of San Diego*, 942 F.2d 1435, 1439 (9th Cir. 1991), *cert. denied*, 502 U.S. 1074 (1992); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

A complaint must set forth the specific facts upon which the plaintiff relies in claiming the liability of each defendant. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Even a liberal interpretation of a civil rights complaint may not supply essential elements of a claim that the plaintiff failed to plead. *Id*. at 268. To establish liability pursuant to Section 1983, Plaintiff must set forth facts demonstrating how each Defendant caused or personally participated in causing a deprivation of Plaintiff's protected rights. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff must present a causal connection between the named defendants and the conduct of which she complains. *See Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992).

**A.    The Officers**

**1.    Special Needs Exception**

Plaintiff complains that Pend Oreille County Sheriff's Department Deputies Eric Schutte and Ronald Froman ("the Officers") violated her Fourth Amendment rights by entering her property and removing personal items without the benefit of a search warrant. (Ct. Rec. 1 ¶ 3). The County Defendants assert that the entry at issue did not violate the

ORDER . . . - 4

Fourth Amendment because the "special needs" exception to the warrant requirement applies.  The undersigned agrees.

Under the special needs exception, a warrant is not required when "'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.'" *Griffin v. Wisconsin*, 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 351, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).  If a court determines that such conditions exist, it will "assess the constitutionality of the search by balancing the need to search against the intrusiveness of the search." *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1059 (9th Cir. 2002) (citing *Ferguson v. City of Charleston*, 532 U.S. 67, 78, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001)).

In *Henderson*, the Ninth Circuit addressed the legality of the entry of a private residence by law enforcement officers and a private citizen in the course of the enforcement of a civil court order. *Henderson*, 305 F.3d at 1052.  When the private citizen and the officers arrived at the private residence to retrieve property described in the civil court order, the homeowner was combative, and the officers arrested the homeowner for obstruction.  While the homeowner was being transported to the police station, two officers entered the residence to accompany the private citizen while she retrieved the property listed in the civil court order. *Id*.  The homeowner subsequently filed a Section 1983 claim alleging her rights had been violated by the illegal entry.

///

ORDER . . . - 5

In addressing the homeowner's Fourth Amendment claim, the Ninth Circuit held that the special needs exception to the warrant requirement applied and that the balance of interests in the case demonstrated that the officers' entry into the home did not run afoul of the constitution. *Henderson*, 305 F.3d at 1056-1057. The Court determined that the officers were engaged outside the ordinary needs of law enforcement, requiring the officers to get a warrant would have been superfluous because the officers already had a court order in their possession detailing the relevant restraints imposed and property rights protected, the probable cause requirement was impracticable to the task of maintaining the peace while effectuating the court order, and the officers' actions were limited to accompanying the private citizen while she retrieved the property listed in the court order. *Id*. at 1057-1061.

In the instant matter, Jessica Bodey, as court appointed GAL for Edgar Bush, had been frustrated by Plaintiff in her efforts to obtain information concerning the assets and property of Mr. Bush. The "special need" was thus the identification and retrieval of documents that would aid the GAL in identifying and locating Mr. Bush's assets and identifying his treating healthcare providers. The Officers were merely engaged in keeping the peace and facilitating the entry into the private residence so the GAL, pursuant to the civil court order, could identify and retrieve said documents. Like the officers in *Henderson*, the Officers "were serving as neutral third parties acting to protect all parties. The officers did not enter the house to obtain evidence of criminal wrongdoing." *Henderson*, 305 F.3d at 1057.

Like *Henderson*, requiring the Officers to get a warrant would have been superfluous as the Officers already had a court order detailing what the GAL needed to accomplish.  As noted above, the *Henderson* Court also found that the requirement of probable cause, in the context of a warrant, would weaken the efficacy of the restraining order because probable cause determinations are "peculiarly related to criminal investigations" and are "unsuited to the task of maintaining the peace while effectuating a court order."  *Id*. at 1059.  The Court finds that the "special needs" exception applies in this case.

Because the "special needs" exception is applicable, the Court must next "assess the constitutionality of the search."  *Henderson*, 305 F.3d at 1059.  Once a court determines that the special needs doctrine applies to a search, it must "assess the constitutionality of the search by balancing the need to search against the intrusiveness of the search."  *Henderson*, 305 F.3d at 1059 (citing *Ferguson*, 532 U.S. at 78).  The factors considered are the subject of the search's privacy interest, the government's interests in performing the search, and the scope of the intrusion.  *Id*. at 1059-60.

The government has an interest in protecting the assets and health of an incompetent person in the context of guardianship proceedings.  In addition, the State Judiciary has an interest in maintaining the integrity of court orders issued in the context of guardianship proceedings by ensuring that they are followed.  Although the Officers did cut the padlock on the gate to gain access to the property, the Officers "played no active role" in the court authorized inspection and seizure by the GAL and her assistant, they simply stood

by to prevent a breach of the peace while the court's order was being implemented.  *See Henderson*, 305 F.3d at 1060.  Thus, as in *Henderson*, the Officers' conduct "was consistent with their function as keepers of the peace."  *Id.*  Furthermore, as stated by the *Henderson* Court, there was no evidence the Officers in any way exploited their presence in the residence, or used it as a means of subterfuge.  *Id.*

While Plaintiff had a reasonable expectation of privacy in her residence, the weight of the government's interest and the limited scope of the Officers' intrusion balances in favor of a finding that the Officers' actions were constitutional.  The Court finds that the conduct of the Officers was justified under the "special needs" exception to the warrant requirement.  Therefore, the Officers are not liable as a matter of law for the entry and search of Plaintiff's property.

## 2.  Quasi-Judicial Immunity

The Officers are additionally entitled to absolute quasi-judicial immunity for their actions in this case.

In *Coverdell v. Department of Social and Health Services*, 834 F.2d 758, 764-65 (9th Cir. 1987), the Ninth Circuit articulated the policy behind absolute quasi-judicial immunity as follows:

> The rationale for immunizing persons who execute court orders is apparent.  Such persons are themselves "integral parts of the judicial process."  *Briscoe v. LaHue*, 460 U.S. 325, 335, 103 S.Ct. 1108, 1116, 75 L.Ed.2d 96 (1983).  The fearless and unhesitating execution of court orders is essential if the court's authority and ability to function are to remain uncompromised.  As the First Circuit has explained with respect to a receiver who acted pursuant to court directives:
>
> "To deny him this [absolute] immunity would seriously encroach on the judicial immunity already recognized by the Supreme Court . . . .  It would make the receiver a lightning rod for harassing

litigation aimed at judicial orders.  In addition to the unfairness of sparing the judge who gives an order while punishing the receiver who obeys it, a fear of bringing down litigation on the receiver might color a court's judgment in some cases . . . ."  *Kermit Construction Corp.*, 457 F.2d at 3.

*Coverdell*, 834 F.2d at 765.

Here, the Officers were executing a facially valid civil court order when they entered Plaintiff's property and stood by while the GAL and her assistant performed the inspection and document retrieval authorized by Judge Nielson, a Pend Oreille County Superior Court Judge.  Pursuant to *Coverdell*, the Officers are entitled to absolute quasi-judicial immunity in this case.

### 3.    Qualified Immunity

The Officers are also entitled to qualified immunity for their actions in this matter.

Qualified immunity shields government officials, including law enforcement officers, who are performing discretionary functions "from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Harris v. City of Roseburg*, 664 F.2d 1121, 1127 (9th Cir. 1981) (extending the privilege of qualified immunity to police officers).

Pursuant to *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001),[1] when confronted with a claim of qualified

---

[1]On January 21, 2009, the United States Supreme Court receded from *Saucier* by concluding that courts need not first determine whether facts alleged by plaintiff make out a violation of a constitutional right in resolving qualified immunity claims.

immunity, a court should first ask the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id*. "On the other hand, if a violation could be made out [under the first inquiry] on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id*. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. Under this standard, if a law does not put an "officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate" for those claims stemming from violations of that law. *Id*. In other words, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. (quoting *Anderson*, 483 U.S. at 640).

///

---

*Pearson v. Callahan*, --- S.Ct. ---, 2009 WL 128768. *Pearson* does not prevent courts from following the *Saucier* procedure, it simply recognizes that courts should have discretion to decide whether that procedure is worthwhile in particular cases. *Pearson* at 13. The Supreme Court held that "the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case." *Id*.

ORDER . . . - 10

In addition, an officer is immune from suit, even when he makes a constitutionally deficient decision, if he reasonably misapprehended the law governing the circumstances he confronted. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier*, 533 U.S. at 206). This exception is premised on the fact that it is sometimes difficult for an officer to determine how a particular legal doctrine applies to the factual situation he faces. *Saucier*, 533 U.S. at 205. In these situations, if "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." *Id*. "[Q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful. *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (internal quotation marks omitted). As a result of the above-described standards, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Here, the Court must determine whether a reasonable officer could have believed his conduct would violate Plaintiff's rights "in light of the specific context of this case." *Saucier*, 533 U.S. at 201. Viewing the facts in the light most favorable to Plaintiff, the inquiry in this case is whether a law enforcement officer with the information known to the Officers could reasonably have believed that his particular conduct was lawful. Given that the Officers in this case were executing a facially valid court order issued by Judge Nielson when they entered Plaintiff's property, a reasonable officer in the position of the Officers would have believed his conduct was

ORDER . . . - 11

lawful.  The Court therefore finds that the Officers are entitled to qualified immunity from Plaintiff's claims, even if their entry on Plaintiff's property constituted a constitutional violation.

Based on the foregoing, the Court finds that the Officers are entitled to judgment as a matter of law on Plaintiff's claims under Section 1983.

**B.    Gerald Weeks**

Plaintiff appears to allege that Defendant Gerald Weeks, the Pend Orieille County Sheriff, failed to adequately train and supervise the Officers in the performance of their duties in executing civil orders. (Ct. Rec. 45 at 3, 14-15).

A supervisor is only liable for the constitutional violations of his subordinate if that supervisor participated or directed such violations or knew of the violations and failed to act to prevent them.  *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680-681 (9th Cir. 1984).  Here, Plaintiff has not alleged, nor has there been any evidence presented, that Defendant Weeks was personally involved in or knew of the entry upon Plaintiff's property or that he failed to supervise the Officers in any way.  There has additionally been no evidence presented to support the imposition of liability on Defendant Weeks for failing to train the Officers.

Plaintiff must support her failure to train allegations by describing the training and explaining why it was inadequate. Plaintiff has not filed a statement of material facts in this case and nowhere in Plaintiff's memoranda has she provided a description of the training that the Officers actually received.  Unless the fact-finder

has a clear understanding of the training that the Officers actually received, the fact-finder cannot assess the adequacy of the program. *See Merritt v. County of Los Angeles*, 875 F.2d 765, 770-71 (9th Cir. 1989) (the Ninth Circuit upheld the trial judge's decision to grant judgment notwithstanding the verdict on the plaintiff's allegation of inadequate training where he "did not present any evidence indicating that the sheriff's department's training program . . . was in any way inadequate[,]" and the "evidence presented at trial clearly and unequivocally established that the training was extensive and comprehensive."); *see also Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008) (the Ninth Circuit concluded "the district court was correct to find that even if the City's training may not have been ideal, [the plaintiff] offers nothing that would establish the kind of 'conscious' or 'deliberate' choice by the City to risk a 'likely' violation of constitutional rights.").

The undisputed facts in this case fail to give rise to any inference that Defendant Weeks participated in or knew of the entry upon Plaintiff's property, failed to supervise the Officers properly, or trained the Officers inadequately. Moreover, the facts fail to give rise to an inference that it was the custom or policy of Defendant Weeks to allow subordinate officers to enter private property without legal justification. Based on the foregoing, Defendant Weeks is entitled to judgment as a matter of law on Plaintiff's claim against him.

///

///

ORDER . . . - 13

**C.    Pend Oreille County**

Plaintiff also names the Pend Oreille County Sheriff's Department as a defendant in this Section 1983 civil rights action.  (Ct. Rec. 1).

Plaintiff may not recover from Pend Oreille County under Section 1983 on a theory of *respondeat superior*.  *See Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).  Rather, a municipality may only be held liable under Section 1983 if Plaintiff's injuries are traceable to one of the municipality's policies or customs.  *Monell*, 436 U.S. at 690. Plaintiff is required to establish that Pend Oreille County had a policy, custom or practice that was the "moving force" behind the alleged constitutional deprivation.  *Id*. at 694-695.; *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (a *Monell* plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.").

Here, as noted by the County Defendants, Plaintiff has failed to demonstrate that the alleged unconstitutional activity of the County Defendants was pursuant to an official Pend Oreille County custom, policy, or procedure.  (Ct. Rec. 47 at 6-7).  Municipalities may be held responsible only when their official policies cause their employees to violate another person's constitutional rights.  *Monell,* 436 U.S. at 691.  Plaintiff has not identified a specific policy or custom that, if followed, would have resulted in the deprivation of her civil rights.  Because Plaintiff has failed to set forth facts to

establish a policy or custom existed in Pend Oreille County which was violative of Plaintiff's rights in this case, no triable issue of material fact exists as to this claim.

Likewise, there is no evidence which demonstrates that there was a failure to train which amounted to any deliberate indifference. *See supra*. Failure to provide adequate training may serve as the basis for Section 1983 liability against a municipality "where the city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *Harris*, 489 U.S. at 392. There has been no evidence presented in this case establishing that a failure to train lead to a "deliberate indifference" of Plaintiff's rights.

Because Plaintiff fails to identify a specific policy, custom or practice of Pend Oreille County that was the "moving force" behind the alleged constitutional deprivation or demonstrate that a failure to train lead to a "deliberate indifference" of Plaintiff's rights, the Court finds that Pend Oreille County is not liable as a matter of law under Section 1983.

**D.    Jessica Bodey**

**1.    Special Needs Exception**

Plaintiff asserts that Jessica Bodey, in her position as GAL for Edgar Bush, violated Plaintiff's Fourth Amendment rights by entering her property under color of law and removing personal items without the benefit of a warrant. (Ct. Rec. 45 at 2-5). However, as

///

///

ORDER . . . - 15

correctly argued by Defendant Bodey, the "special needs" exception to the warrant requirement, as discussed above with respect to the County Defendants, applies equally to Defendant Bodey.

As noted above, the "special need" was the identification and retrieval of documents that would assist the GAL in identifying and locating Mr. Bush's assets and identifying his treating healthcare providers. *Supra*. Jessica Bodey, as court appointed GAL for Edgar Bush, had been frustrated in her efforts to obtain information concerning the assets and property of Edgar Bush from Plaintiff[2] and had therefore sought the assistance of the court to obtain those records and files. Defendant Bodey was acting pursuant to her statutory duty as a GAL[3] when she sought and obtained a court order specifically authorizing the entry upon Plaintiff's property.

As determined above, in assessing the constitutionality of the search by balancing the need to search against the intrusiveness of the search, Plaintiff's reasonable expectation of privacy in her residence is outweighed by the government's interest in protecting the assets and health of an incompetent person in the context of guardianship proceedings as well as the State Judiciary's interest in maintaining the integrity of court orders issued in the context of guardianship proceedings. *Henderson*, 305 F.3d at 1059. Like the

---

[2]Plaintiff had refused to provide Defendant Bodey with an accounting of funds handled and acts performed as Edgar Bush's power of attorney and had refused to supply any documentation relating to Mr. Bush's bank accounts or other assets and liabilities. (Ct. Rec. 18 at 5, 18).

[3]*See* Wash. Rev. Code § 11.88.090(5).

ORDER . . . - 16

County Defendants, Defendant Bodey's entry upon Plaintiff's property was justified under the "special needs" exception to the warrant requirement.  She is therefore not liable as a matter of law for the entry and search of Plaintiff's property.

### 2.  State Actor

In any event, Defendant Bodey is entitled to judgment as a matter of law in this case because, as a court appointed GAL, she is not a state actor for purposes of 42 U.S.C. § 1983.  *See Kirtley v. Rainey*, 326 F.3d 1088 (9th Cir. 2003).

Section 1983 requires a claimant to prove (1) a person acting under color of state law (2) committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States.  *Leer,* 844 F.2d at 632-33. It is well established that "[t]here is no 'rigid formula' for determining whether a state or local law official is acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006).  The acts of a public official are not automatically considered to be under color of law merely because he or she committed the act while on duty and in uniform.  *Van Ort v. Estate of Michael Stanewich*, 92 F.3d 831, 838 (9th Cir. 1996) (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990)).  Rather, a government employee "acts under color of state law while acting in his [or her] official capacity or while exercising his [or her] responsibilities pursuant to state law." *McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000).

*///*

ORDER . . . - 17

In *Kirtley*, the Ninth Circuit determined that a GAL appointed to represent the interests of a child in Washington State court custody proceedings could not be considered to be acting under color of state law for purposes of Section 1983 liability.  *Kirtley*, 326 F.3d at 1088.  The Court analyzed four different tests used to identify state action, public function, joint action, government compulsion or coercion and governmental nexus, and concluded that the actions of a GAL, like those of a public defender, are not fairly attributable to the state.  *Id*. at 1096.

Here, analogous to the guardian in *Kirtley*, Defendant Bodey's duty is primarily to the alleged incompetent, Edgar Bush, concerning a guardianship proceeding.  Defendant Bodey's responsibility as a GAL is to advocate the best interests of Mr. Bush, and Mr. Bush's interests are separate and distinct from those of the state.  When the GAL reports to the court, she reports as an independent investigator and a reporter of facts, not as a proponent of the court.  The GAL "functions independently of the court, exercising advocacy obligations that are, by law, to the [incompetent], not the court."  *Kirtley*, 326 F.3d at 1094.  Accordingly, Defendant Bodey's purpose as a GAL is to support the alleged incompetent, a function independent of the court.

Based on the foregoing undisputed facts, Defendant Bodey's function as a GAL does not satisfy the state action test.  Therefore, Plaintiff cannot maintain a cause of action under 42 U.S.C. § 1983 against Defendant Bodey.

///

///

ORDER . . . - 18

### 3.    Quasi-Judicial Immunity

Even if Defendant Bodey, functioning as a GAL, was deemed to be a state actor under Section 1983, she would still be protected from liability in this case under the doctrine of quasi-judicial immunity. *See Coverdell*, 834 F.2d at 764-765 (social workers enjoy absolute immunity from damages when performing quasi-judicial actions); *see also Meyers v. Contra Costa County Dep't of Social Services*, 812 F.2d 1154, 1156-57 (9th Cir. 1987) (absolute prosecutorial immunity extended to social service case workers in initiating and pursuing child dependency proceedings).

In *Coverdell*, the Ninth Circuit held that a child protective services ("CPS") worker who executes an order for seizure and placement of a child is entitled to absolute quasi-judicial immunity from civil liability. *Coverdell*, 834 F.2d at 764-765.  The CPS worker in *Coverdell*, Defendant Barbara McLaughlin, was employed by the state of Washington.  Her duties included investigating and reporting cases of alleged child abuse and neglect.  Ms. McLaughlin had been informed that the Plaintiff, Alice Coverdell, had moved into McLaughlin's service region.  Ms. McLaughlin was advised that Ms. Coverdell was pregnant with her third child and that her parental rights to her eldest child had been terminated because she and her husband were emotionally unstable, easily angered, violent, and a danger to the child.  Ms. McLaughlin attempted to visit the Coverdell residence and was denied admission to the residence.  Ms. McLaughlin later received information that Ms. Coverdell had given birth to a baby girl.  As a result of said information, McLaughlin provided the prosecuting

attorney with an affidavit containing the history of Ms. Coverdell's circumstances which opined that the newborn child would be in danger if she were to reside with the Coverdells.  Without notice to Ms. Coverdell, the prosecuting attorney filed a motion and order to take custody of the infant child, and the court issued an order directing Ms. McLaughlin to execute the order by removing the child from the hospital and placing her in temporary sheltered care.  *Coverdell*, 834 F.2d at 759-760.

The Ninth Circuit concluded in *Coverdell* that a CPS worker is accorded absolute quasi-judicial immunity from liability for damages stemming from the worker's apprehension of a child pursuant to a valid court order.  *Coverdell*, 834 F.2d at 765.  The Court reasoned that permitting the CPS worker to become "a lightning rod for harassing litigation aimed at judicial orders" would seriously imperil the effectiveness of state child protection schemes.  *Id.*  The Court declared that the fearless and unhesitating execution of court orders is essential if the court's authority and ability to function are to remain uncompromised.  *Id.* at 765.  The Court found that the CPS worker's actions were plainly authorized by the court's order, which expressly directed the apprehension of the child, and she was thus protected by absolute quasi-judicial immunity.

The *Coverdell* logic is applicable here.  Defendant Bodey entered Plaintiff's property pursuant to a civil court order.  The court order directed Defendant Bodey to enter into the residence Edgar Bush had shared with Plaintiff prior to his hospitalization to ascertain, in a reasonable manner, information regarding the finances of Edgar Bush,

ORDER . . . - 20

his medical history, and family, friends, and/or contact persons.
Authorization was further given to take any necessary steps to secure
Mr. Bush's personal property to prevent its disposal or destruction.
Defendant Bodey, as the court-appointed GAL, entered the residence
pursuant to a court order, where the person she was to investigate and
protect had resided.  Upon entry, Defendant Bodey searched for and
secured the documentation she was directed by court order to find.
Like the CPS worker in *Coverdell*, Defendant Bodey is entitled to
absolute quasi-judicial immunity for her actions in executing the
court order.

> **4.    Quasi-Prosecutorial Immunity**

To the extent Plaintiff is arguing that Defendant Bodey is liable
for her actions in seeking and obtaining the court order to enter
Plaintiff's property (Ct. Rec. 45), Defendant Bodey is additionally
entitled to absolute immunity from civil liability for this quasi-
prosecutorial conduct.  *Coverdell*, 834 F.2d at 763-764; *Meyers*, 812
F.2d at 1157.  Prosecutors are absolutely immune from liability under
Section 1983 for initiating prosecutions and other acts intimately
associated with the judicial phase of the criminal process.  *See Burns
v. Reed,* 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991).
"The functions of a CPS worker in initiating and pursuing child
dependency proceedings are analogous to the functions of the
prosecutor in initiating and prosecuting criminal cases;" accordingly,
the Ninth Circuit has concluded that CPS workers are entitled to
absolute immunity for these actions.  *Coverdell*, 834 F.2d at 764.
Defendant Bodey's conduct as the GAL for Mr. Bush is analogous to the

ORDER . . . - 21

acts of a CPS worker in pursuing child dependency proceedings.  She is thus entitled to absolute immunity from civil liability for the quasi-prosecutorial conduct of seeking and obtaining a court order in this matter.

**E.    Carol Gaherin**

**1.    Special Needs Exception**

Plaintiff has additionally named as a defendant Carol Gaherin, the protective payee directed by Judge Nielson's order to assist GAL Bodey in the preparation of an inventory of Mr. Bush's personal property and to take any necessary steps to secure that property to prevent its disposal or destruction. (Ct. Rec. 1).  Plaintiff asserts that Defendant Gaherin entered her property in violation of her Fourth Amendment rights.

Defendant Gaherin did not violate Plaintiff's Fourth Amendment rights because, as indicated above, the "special needs" exception to the warrant requirement applies in this case. *Supra*.  Defendant Bodey's efforts to obtain information concerning the assets and property of Edgar Bush had been frustrated by Plaintiff.  Therefore, the "special need" was the identification and retrieval of documents that would assist the GAL in identifying and locating Mr. Bush's assets and identifying his treating healthcare providers.  As determined above, in assessing the constitutionality of the search of Plaintiff's residence by balancing the need to search against the intrusiveness of the search, Plaintiff's reasonable expectation of privacy is outweighed by the government's interest in protecting the assets and health of an incompetent person in the context of

ORDER . . . - 22

guardianship proceedings as well as the State Judiciary's interest in maintaining the integrity of court orders issued in the context of guardianship proceedings. *Supra.*

Like the County Defendants and Defendant Bodey, Defendant Gaherin's conduct is justified under the "special needs" exception to the warrant requirement. She is thus not liable as a matter of law for the entry and search of Plaintiff's property.

### 2. State Actor

In any event, like Defendant Bodey, Defendant Gaherin is entitled to judgment as a matter of law in this case because, as a court appointed payee directed by court order to accompany and assist the GAL in her duties, she is not a state actor for purposes of 42 U.S.C. § 1983. *See Kirtley*, 326 F.3d at 1088.

As noted above, Section 1983 requires a claimant to prove (1) a person acting under color of state law (2) committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. *Leer,* 844 F.2d at 632-33. In *Kirtley*, the Ninth Circuit determined that the actions of a GAL appointed to represent the interests of a child in a Washington State custody proceeding could not be fairly attributable to the state and thus did not constitute state action for purposes of Section 1983 liability. *Kirtley*, 326 F.3d at 1095-1096.

As stated above, GAL Bodey represented the interests of the alleged incompetent in this case, Mr. Bush. Since the interests of Mr. Bush were separate and distinct from those of the state, and the GAL served as an independent investigator reporting to the court, GAL

Bodey's activities could not be fairly attributable to the state. *Supra*. Here, the role of the protective payee, Defendant Gaherin, is identical to that of GAL Bodey. Defendant Gaherin was appointed as protective payee and as an assistant to GAL Bodey in the court's orders. Like the GAL, the protective payee owes a duty to the protected party, Mr. Bush, and serves as an independent investigator for the court.

Like GAL Bodey, Defendant Gaherin's conduct as the protective payee is this case does not constitute state action. Accordingly, Plaintiff cannot maintain a cause of action under 42 U.S.C. § 1983 against Defendant Gaherin.

**3.    Absolute Immunity**

Again, like Defendant Bodey, even if Defendant Gaherin, functioning as a protective payee, was deemed to be acting under color of law, she would still be protected from liability in this Section 1983 action under the doctrine of quasi-judicial immunity.

As noted above, the Ninth Circuit has extended absolute quasi-judicial immunity to CPS workers who execute orders for the seizure and placement of children. *Coverdell*, 830 F.2d at 765. In *Coverdell*, the Court reasoned that the social worker's independence would be compromised should the social worker be in constant fear of a mistake that would result in a time consuming and financially devastating civil suit. *Id*. The Court also stated that the fearless and unhesitating execution of court orders is essential if the court's authority and ability to function are to remain uncompromised. *Id*. ///

ORDER . . . - 24

Here, Defendant Gaherin, a court appointed payee, acting in conjunction with a court appointed GAL, enforced a court order permitting entry into Plaintiff's residence to obtain information on behalf of Mr. Bush, when those efforts to obtain that information had previously been frustrated by Plaintiff.  The functions of the social worker in *Coverdell* are analogous to those of the GAL and the protective payee working in conjunction with the GAL in this case. Like the CPS worker in *Coverdell* and Defendant Bodey in this case, Defendant Gaherin is entitled to absolute quasi-judicial immunity for her actions in carrying out the court order.

**CONCLUSION**

Based on the foregoing, **IT IS HEREBY ORDERED that** Defendants' motions for summary judgment (**Ct. Rec. 8, 17, 38**) are **GRANTED.** Judgment shall be entered in favor of Defendants, and Plaintiff's action shall be dismissed in its entirety.

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter this order, provide copies to Plaintiff and counsel for Defendants, **enter judgment in favor of all Defendants** and **CLOSE THE FILE.**

**DATED** this ___9th___ day of March, 2009.

_____
S/Fred Van Sickle
Fred Van Sickle
Senior United States District Judge

ORDER . . . - 25